UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21970-CIV-ALTONAGA/Damian

**MATTHEW GHANDOUR**,

    Plaintiff,
v.

**CITY OF MIAMI**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendants, the City of Miami and Officer Imani Davis's Joint Motion to Dismiss [ECF No. 46]. Plaintiff, Matthew Ghandour filed a Response [ECF No. 47], to which Defendants filed a Reply [ECF No. 48]. The Court has carefully considered the Second Amended Complaint ("SAC") [ECF No. 45], the parties' written submissions, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

### I. BACKGROUND

On August 23, 2022, Davis — working as a police officer with the City of Miami Police Department — responded to a potential emergency at an address near a store owned by Plaintiff's family. (*See* SAC ¶¶ 9–10). Plaintiff walked outside the store to observe the unfolding events "from a safe distance on his property with a family friend[.]" (*Id.* ¶ 10 (alteration added)). No one told Plaintiff that he or his friend was "affecting or impeding the investigation," yet Davis "approached them and angrily questioned the friend about seemingly filming from his cell phone[.]" (*Id.* ¶¶ 10–11 (alteration added)). Plaintiff then "attempted to film the encounter from

his own cell phone[,]" but Davis seized the phone from Plaintiff's hand and "physically prevented him from retrieving it." (*Id.* ¶¶ 11–12 (alteration added)).

Plaintiff was respectful and courteous, and at no point disobeyed any orders or showed aggression or violence. (*See id.* ¶ 13). Davis nonetheless "shov[ed Plaintiff] backwards several feet, and continued towards him, finally body-slamming him to the ground." (*Id.* ¶ 14 (alteration added)). After pushing Plaintiff, Davis arrested him and charged him with disorderly conduct. (*See id.* ¶ 17). A lieutenant later concluded Plaintiff should be "unarrest[ed.]" (*Id.* ¶ 18 (alteration added; quotation marks and footnote call number omitted)). Plaintiff sustained injuries that required admission to the emergency room; necessitated additional medical treatment; and caused him permanent damage, including "head injuries and a chipped tooth." (*Id.* ¶ 15).

On May 26, 2023, Plaintiff filed a Complaint [ECF No. 1] against Davis and the City, asserting violations of Florida and federal law. Defendants moved to dismiss twice (*see* Joint Mot. Dismiss [ECF No. 22]; Joint Mot. Dismiss [ECF No. 33]); each time, Plaintiff conceded errors and was granted leave to amend (*see* Aug. 1, 2023 Order [ECF No. 26]; Sept. 7, 2023 Order [ECF No. 44]). On September 7, 2023, Plaintiff filed the Second Amended Complaint, asserting six claims for relief. (*See generally* SAC).[1] In Counts I, II, III, and VI, Plaintiff states claims of false arrest under 42 U.S.C. section 1983, excessive force under section 1983, battery under Florida law, and First Amendment retaliation under section 1983, respectively, against Davis. (*See id.* ¶¶ 20–35, 46–50). In Counts IV and V, Plaintiff states claims of battery and false arrest/false imprisonment under Florida law, respectively, against the City. (*See id.* ¶¶ 35–45).

---

[1] During the pendency of this case, on August 25, 2023, the City advised Plaintiff that an internal affairs investigation into the incident sustained charges against Davis of "Excessive Force, False Arrest, and Improper Procedure" by a preponderance of the evidence. (SAC ¶ 18 n.2 (quotation marks omitted)).

Defendants now seek dismissal a third time. (*See generally* Mot.). This time around, Plaintiff defends the sufficiency of his pleading. (*See generally* Resp.).

## II.  LEGAL STANDARD

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (alteration added; quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added; citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

3

## III. DISCUSSION

Defendants seek dismissal on several grounds. They argue (1) the City is entitled to sovereign immunity; (2) Davis is entitled to qualified immunity; (3) the battery claim is insufficiently pleaded; and (4) the excessive force and battery claims "merge" into the false arrest claims. (*See generally* Mot.). The Court first addresses whether the City is entitled to sovereign immunity (it is); then addresses whether Davis is entitled to qualified immunity (he is, on one claim only); and finally turns to the sufficiency of the surviving claims against Davis.

### A. Sovereign Immunity (Counts IV and V)

"The State of Florida and its subsidiaries — including municipalities — are generally immune from tort liability[.]" *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001) (alteration added; footnote call number omitted; citing Fla. Const., art. X, § 13). Florida has waived this immunity, however, "for tort claims in the same manner and to the same extent as a private individual[.]" Fla. Stat. § 768.28(1), (5)(a) (alteration added). The waiver includes liability "for the acts or omissions of an officer, employee, or agent" of the State or political subdivision but excludes liability when those acts are "committed in bad faith or with malicious purpose in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.* § 768.28(9)(a). Against this backdrop, the City argues Davis's actions can only be characterized as committed in bad faith, with malicious purpose, or in a willful or wanton manner, thereby falling outside the sovereign immunity waiver. (*See* Mot. 2–6). The Court agrees.

To be sure, section 768.28 waives the City's sovereign immunity for "both negligent and intentional torts alike." *Blue v. Miami-Dade Cnty.*, No. 10-23599-Civ, 2011 WL 2447699, at *1 (S.D. Fla. June 15, 2011) (quotation marks and citations omitted). Nonetheless, if conduct is egregious enough to be characterized as "in bad faith or with malicious purpose[,]" it falls outside

4

the ambit of section 768.28's waiver of sovereign immunity. *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1330 (S.D. Fla. 2018) (alteration added; quotation marks and citation omitted). To assess whether conduct meets this high bar, courts consider whether the conduct is sufficiently "reprehensible" to fall outside the immunity waiver. *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987). At the motion-to-dismiss stage, courts should only dismiss a complaint on sovereign immunity grounds when the facts, taken as true, "can only be characterized as stating claims for acts done in bad faith or in a willful and wanton manner." *Gregory v. Miami-Dade Cnty.*, 86 F. Supp. 3d 1340, 1343 (S.D. Fla. 2015) (citing *Richardson*, 511 So. 2d 1123; *Iqbal*, 556 U.S. at 678).

Plaintiff relies on *McGhee v. Volusia County* to demonstrate that sovereign immunity is inappropriate here. (*See* Resp. 3 (citing 679 So. 2d 729, 733 (Fla. 1996))). There, an officer, without provocation, attacked, grabbed by the throat, and forcefully kicked an arrestee who the officer ostensibly believed was threatening him. *See McGhee*, 679 So. 2d at 730. While the officer may have intentionally abused his office, the court left to the factfinder the question of whether the conduct rose to the level of bad faith or malice. *See id.* at 733. Importantly, the court emphasized that "[t]here may be cases in which summary dismissal would be proper based on different facts." *Id.* at 733 n.7 (alteration added). This is such a case.

Many courts in this District have dismissed cases much like this one, where the plaintiff did not plead in the alternative, and the allegations only connoted conduct that could be described as in bad faith. *See, e.g.*, *Casado*, 340 F. Supp. 3d at 1330 (dismissing on sovereign immunity grounds complaint that alleged an officer "repeatedly punch[ed] the plaintiff in the face, slamm[ed] him on the hood of his car, arrest[ed] him without probable cause, and fabricat[ed] evidence" (alterations added)); *Gregory*, 86 F. Supp. 3d at 1341 (same, when complaint alleged a juvenile

arrestee posing no threat "turned slightly" while making himself prone with his back to the officer, and the officer shot him nine times in the back); *Alicea v. Miami-Dade Cnty.*, No. 13-21549, Order [ECF No. 95] 5 filed Oct. 27, 2014 (S.D. Fla. 2015) (same, when complaint alleged the officer "violently pummeled [the plaintiff] in the head, face and torso . . . without any reasonable suspicion or probable cause" to arrest or detain him (alterations added; quotation marks and citation omitted)); *Mena v. Miami-Dade Cnty.*, No. 14-20030-Civ, 2014 WL 3667806, at *1 (S.D. Fla. July 22, 2014) (same, when complaint alleged officers pulled one plaintiff out of the car and threw him to the ground; threw another against her car; and beat, handcuffed, and arrested both of them when neither had resisted arrest).

Like these cases, the present case evinces "reprehensible and unacceptable" conduct that does not give rise to municipal liability. *Richardson*, 511 So. 2d at 1123. According to Plaintiff, Davis angrily approached Plaintiff, ripped his phone from his hand, shoved him several feet, body-slammed him hard enough to cause permanent injuries, and arrested Plaintiff without so much as reasonable suspicion. (*See* SAC ¶¶ 11–12, 14–18). All the while, Plaintiff insists he was nothing but calm, docile, courteous, and not breaking any laws or interfering with the ongoing investigation. (*See id.* ¶ 13). Taking Plaintiff's allegations as true, and drawing all reasonable inferences in Plaintiff's favor, the officer's conduct can only be described as "committed in bad faith or with malicious purpose." Fla. Stat. § 768.28(9)(a). Since Plaintiff's claims against the City are not pleaded in the alternative, Counts IV and V are dismissed.

**B. Qualified Immunity (Counts I, II, and VI)**

The Court now addresses Davis's arguments that he is entitled to the qualified immunity defense to bar the three section 1983 claims. (*See* Mot. 7–16).

To be entitled to the qualified immunity defense, a government official must demonstrate

"he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation marks and citations omitted). The burden then "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). A plaintiff makes this showing by establishing that (1) the defendant's conduct violated the plaintiff's constitutional rights; and (2) the constitutional violation was clearly established at the time. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citations omitted).[2]

A right is clearly established when it "would be apparent to a reasonable officer." *Gilmore v. Hodges*, 738 F.3d 266, 277 (11th Cir. 2013). To prove a right is clearly established, a plaintiff must either: (1) point to "a materially similar decision" of the Supreme Court, Eleventh Circuit, or of the supreme court of the state where the case arose; (2) show that "'a broader, clearly established principle should control the novel facts' of the case"; or (3) demonstrate that the challenged conduct "'so obviously'" violates the constitution that "'prior case law is unnecessary.'" *Powell v. Snook*, 25 F.4th 912, 920 (11th Cir. 2022) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005)).

The second and third paths "are rarely-trod ones." *Crocker v. Beatty*, 995 F.3d 1232, 1240 (11th Cir. 2021) (citation omitted). This is likely due to the Supreme Court's admonition to not "define clearly established law at a high level of generality[.]" *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (alteration added; citation and quotation marks omitted). To that end, a plaintiff seeking to overcome qualified immunity by pointing to a broad, general rule of law must show the

---

[2] "[T]he district court has discretion to determine in what order to address each part." *Keating*, 598 F.3d at 762 (alteration added; citing *Pearson*, 555 U.S. at 236).

7

rule applies "with 'obvious clarity' to the circumstances" of his case. *Long v. Slaton*, 508 F.3d 576, 584 (11th Cir. 2007) (quotation marks and citations omitted).

"Although the defense of qualified immunity is typically addressed at the summary judgment stage, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (alteration adopted; quotation marks and citation omitted). Even in the motion-to-dismiss context, "[o]nce an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (alteration added; quotation marks and citation omitted).

The parties agree Davis was acting with the scope of his discretionary authority (*see* Mot. 8; Resp. 5), so the Court only addresses whether Plaintiff persuades that qualified immunity is not appropriate here.

1. False Arrest (Count I)

To be entitled to the qualified immunity defense on a false arrest claim, an officer need only demonstrate *arguable* probable cause existed to arrest a plaintiff. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Probable cause exists where "the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985) (quoting *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984)). The assessment of probable cause turns on the elements of the offenses and the operative fact pattern. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137–38 (11th Cir. 2007).

Turning to the parties' arguments, Davis contends he had arguable probable cause to arrest Plaintiff for obstruction, in violation of section 843.02, Florida Statutes, which prohibits persons

from interfering with law enforcement and rescue personnel in executing their legal duties. (*See* Mot. 11). "To convict a defendant of obstructing or resisting an officer without violence, the state must prove two elements: (1) the officer was engaged in the lawful execution of a legal duty and (2) the defendant's action constituted obstruction or resistance of that lawful duty." *W.W. v. State*, 993 So. 2d 1182, 1184 (Fla. 4th DCA 2008) (citing *J.P. v. State*, 855 So. 2d 1262, 1265–66 (Fla. 4th DCA 2003); other citation omitted).

Davis maintains he was securing an emergency scene and thus was lawfully executing a legal duty, and such duty encompassed preventing interference by others so first responders could administer care. (*See* Mot. 11–12). Although Plaintiff alleges that he was at a "safe distance" from the scene, Davis argues this allegation is conclusory and requires factual enhancement. (*Id.* 12–13). Plaintiff dodges this point, arguing that he alleges Davis never asked anyone to step away from the scene, so Davis could not reasonably conclude Plaintiff was obstructing an officer. (*See* Resp. 6 (citing *Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1311–12 (S.D. Fla. Nov. 3, 2020) ("Indeed, [even] a person's refusal to leave the scene of a search or arrest — even while yelling, cursing, or criticizing — rises to the level of obstruction only if the person's physical presence was obstructing or impeding [the officer] in the performance of his duty." (alterations added; quotation marks and citations omitted))).

On the question of whether the officer was performing a legal duty, "it is important to distinguish between a police officer 'in the lawful execution of any legal duty' and a police officer who is merely on the job." *D.G. v. State*, 661 So. 2d 75, 76 (Fla. 2d DCA 1995). Fatal to Davis's argument is that Plaintiff alleges only that Davis responded to the call (*see* SAC ¶ 9), not that he was securing the scene (*see generally id.*). While it may ultimately prove true that Davis was securing the scene and Plaintiff interfered, at the motion-to-dismiss stage, Plaintiff's allegations

9

must be believed, and Davis may not provide information extrinsic to the four corners of the complaint. *See St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) ("The scope of the review must be limited to the four corners of the complaint." (citation omitted)).

Drawing all reasonable inferences in Plaintiff's favor, Davis was not securing the scene; he was simply arriving to a call and was just "on the job" when he arrested Plaintiff, all the while not performing a legal duty. *D.G.*, 661 So. 2d at 76. Further, Plaintiff alleges he never disobeyed, exhibited aggression or violence, or resisted Davis. (*See* SAC ¶ 13). Instead, he alleges he acted in a manner that was "courteous, respectful, deferential, compliant, and docile[.]" (*Id.* (alteration added)). Taking these allegations as true, Davis "did not possess arguable probable cause to arrest [Plaintiff] and thus violated clearly established law in arresting [him.]" *Skop*, 485 F.3d at 1144 (alterations added). Consequently, as to the requested dismissal of Count I, Davis is not entitled to qualified immunity.

2. Excessive Force (Count II)

Davis next contends that he is entitled to qualified immunity on the excessive force claim because Plaintiff "disrupted and threatened" Davis's job of securing the scene, and Plaintiff "insufficiently articulate[s] the use of force such that the Court could conclude [it] was excessive." (Mot. 16 (alterations added)). The Court is not so convinced.

Courts use three factors to assess whether force was excessive: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022) (citation omitted). Courts also consider "the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." *Id.* (citation omitted).

Some additional considerations bear mentioning. First, "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). Moreover, "the absence of a legitimate law enforcement justification for using force is indicative of excessive force." *Richmond*, 47 F.4th at 1182 (citing *Lee*, 284 F.3d at 1198 (officer not entitled to qualified immunity defense on excessive force claim where the court could "discern no reason, let alone any legitimate law enforcement need" for the force); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1308 (11th Cir. 2017) (officer not entitled to qualified immunity from excessive force claim where he "unexpectedly slapped" a Bluetooth device from a plaintiff's ear and punched him in the chest "for no reason")). Further still, the Eleventh Circuit has "repeatedly held that less force is appropriate when the crime at issue is a misdemeanor, and the suspect does not pose a threat or attempt to flee." *Richmond*, 47 F.4th at 1183 (collecting cases).

Here, the factors weigh heavily in favor of finding the force, as alleged, excessive. The only crime at issue was, at most, a misdemeanor. (*See* SAC ¶ 17 (describing arrest for disorderly conduct, a second-degree misdemeanor under section 877.03, Florida Statutes); Mot. 11 (arguing probable cause existed to arrest for obstruction, a first-degree misdemeanor under section 843.02, Florida Statutes)). As explained, Plaintiff alleges he was not a threat, nor was he resisting arrest or fleeing. (*See* SAC ¶ 13). Further, Davis offers no justification for the force applied (*see generally* Mot.; Reply); Plaintiff does not allege why Davis exerted force (*see generally* SAC); and the force was severe enough to cause Plaintiff head injuries and a chipped tooth that required emergency room treatment and continue to give Plaintiff "remarkable pain and discomfort" (*id.* ¶¶ 15–16). Quite plainly, taking the allegations of the SAC as true, Davis used excessive force in violation of the Fourth Amendment.

11

Moreover, Plaintiff is correct that the right Davis allegedly violated was clearly established. (*See* Resp. 7–8). Davis was on notice that use of gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands, violates the Fourth Amendment. *See Richmond*, 47 F.4th at 1184 (collecting cases). In sum, Davis is not entitled to dismissal based on qualified immunity as to Count II.

3. First Amendment Retaliation Claim (Count VI)

Davis also argues that Plaintiff's First Amendment retaliation claim should be dismissed because Davis did not violate a clearly established right. (*See* Mot. 13–15). In his Response, Plaintiff makes no attempt to identify what clearly established right Davis violated (*see generally* Resp.), as is his burden, *see Corbitt*, 929 F.3d at 131.

Plaintiff refers to the "obvious clarity" path of showing a right is clearly established (*see* Resp. 7–8), but he discusses only Fourth Amendment, not First Amendment, principles (*see id.*). The Court notes there is a broad principle in this Circuit that citizens have a First Amendment right to photograph or record police, *see Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000); but Plaintiff does not cite *Smith*, discuss this principle, or explain why it applies to *this incident* with obvious clarity (*see generally* Resp.). In assessing whether *Smith* applies to a particular case, courts often grapple with factual and legal nuances relevant to a given case, reaching differing conclusions. *Compare Crocker*, 995 F.3d at 1242 (holding *Smith* did not apply with obvious clarity to a citizen recording the rapidly evolving scene of a car crash from the I-95 median at which the plaintiff was illegally parked) *with Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1121, 1129 (11th Cir. 2021) (holding that *Smith* clearly established the right to take pictures of cars a woman wrongly believed were illegally parked at a baseball field near her home when woman was not violating law); *and Williams as next friend of Williams v. Carter*, No. 5:21-

cv-510, 2023 WL 158219, at *4–5 (N.D. Ala. Jan. 11. 2023) (holding *Smith* did not apply with obvious clarity to recording police conduct of a public high school during school hours amidst a chaotic scene).

This case bears characteristics of both *Crocker*, because of the rapidly evolving scene of an emergency (*see* SAC ¶ 9); and *Khoury*/*Williams*, because there is no indication Plaintiff was violating any law when recording (*see* SAC ¶¶ 10, 13 (describing Plaintiff's filming "from a safe distance on his property" while acting "compliant")). Yet, it is Plaintiff's burden to demonstrate the right allegedly violated was clearly established, and he has not even tried to do so. (*See generally* Resp.). Accordingly, Davis is entitled to qualified immunity as to Count VI.

### C.  State Law Battery Claim (Count III)[3]

Davis next seeks dismissal of the battery claim on the ground that the Second Amended Complaint lacks sufficient specificity because of Plaintiff's "colloquial" use of the phrase "[b]ody-slamming[.]" (Mot. 17–18 (alterations added)). Without additional clarification, Davis insists "the parties are without notice as to how plaintiff was brought to the ground or how he received head injuries and chipped a tooth." (*Id.* 18). Davis also insists that his shoving Plaintiff was reasonable under the circumstances. (*See id.*). These arguments are remarkable. Indeed, as Plaintiff puts it, they "strain credulity[.]" (Resp. 8 (alteration added)).

First, Davis's confusion at what "body-slamming" means can only be described as deliberately obtuse. And if he truly is unsure what Plaintiff means by the term, a simple internet dictionary search reveals the following definition for "body slam": "a wrestling throw in which

---

[3] Davis may not raise a qualified immunity defense against state law claims. *See Davis v. Monroe Cnty. Bd. of Educ.*, 120 F.3d 1390, 1410 (11th Cir.1997) (Black, J., concurring) ("[Q]ualified immunity does not shield officials from liability grounded on state law." (alteration added)), *rev'd in part on other grounds sub nom. Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999).

13

the opponent's body is lifted and brought down hard to the mat." *Body Slam*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/body%20slam (last visited Jan. 5, 2024). Use of colloquial terminology is not fatal to a claim, and Davis cites no authority to the contrary. (*See generally* Mot.; Reply).

Further, Davis's request for a better "description" is perplexing, to say the least. (Mot. 17). Plaintiff paints the following picture: Davis approached Plaintiff and his friend and angrily questioned them while Plaintiff filmed; almost immediately afterward, Davis seized Plaintiff's phone, and without any aggression from Plaintiff, shoved Plaintiff, continued toward him, and threw him to the ground. (*See* SAC ¶¶ 11–14). It is obvious how Plaintiff hurt his head and chipped his tooth. What more does Davis want? A painstakingly detailed description of the chain of events that caused Plaintiff to impact the ground when his body was met with force, with citations to applicable laws of physics? Certainly, the law does not demand so much.

Under Florida law, "[a] battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996) (alteration added; citing *Dixon v. State*, 132 So. 684 (Fla. 1931); other citations omitted). "[P]olice officers are entitled to a presumption of good faith in regard to the use of force applied during a *lawful* arrest, and officers are only liable for damage where the force used is 'clearly excessive.'" *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (emphasis added; quoting *Sanders*, 672 So. 2d at 47).

For the reasons already explained, Plaintiff paints a clear picture of gratuitous force under the circumstances alleged: a docile, law-abiding citizen being attacked by a police officer effectuating an illegal arrest. (*See* SAC ¶¶ 10–18). Davis's arguments to the contrary are unavailing.

### D.     Merger of Battery and Excessive Force Claims (Counts I, II, IV, and V)

Last, the Court addresses Defendants' contention that Plaintiff's excessive force claim should be dismissed because it merges into his false arrest claim. (*See* Mot. 6–7). Plaintiff fails to address this argument. (*See generally* Resp.). In this Circuit, "a [section 1983] claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (alteration added; citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir. 1995)). Thus, since Plaintiff's claim arises from an illegal arrest, and without any objection from Plaintiff, dismissal of Count II is appropriate. (*See* Reply 4 (citing *United States v. Campbell*, 26 F. 4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); other citations omitted)).[4]

### IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that the Joint Motion to Dismiss **[ECF No. 46]** is **GRANTED in part** and **DENIED in part**. Counts II, IV, V, and VI are **DISMISSED**. Defendant Imani Davis shall file an answer to Counts I and III by **January 23, 2024**.

---

[4] Defendants also argue Plaintiff's battery claim against the City (Count V) should merge into his false arrest claim against the City (Count IV), and they appear to seek dismissal of Plaintiff's battery claim against Davis (Count III) on the same ground. (*See* Mot. 6–7 (seeking dismissal of Counts II, III, and IV)). Because the City is entitled to sovereign immunity, the Court does not address Defendants' merger arguments regarding Counts IV and V. As to Count III, Plaintiff does not assert a state law false arrest claim against Davis (*see generally* SAC), so there is nothing for the battery claim to "merge" into.

CASE NO. 23-21970-CIV-ALTONAGA/Damian

**DONE AND ORDERED** in Miami, Florida, this 9th day of January, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record